IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
(Charlotte Division)

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| **BENTWOOD FARMS, LLC,** | ) | Case No. 18-31823 |
| | ) | |
| | ) | |
| Debtor. | ) | |

## PLAN OF REORGANIZATION

     Bentwood Farms, LLC, the Debtor, submits this Plan of Reorganization pursuant to section 1121(a) of Title 11 of the United States Code, 11 U.S.C. § 101 *et seq.*

## ARTICLE I
## DEFINITIONS

     As used in this chapter 11 plan, the following terms shall have the respective meanings specified below:

     1.1   <u>Administrative Claim</u>.  Any cost or expense of administration of the Chapter 11 Case (a) required to be asserted by filing an application with the Bankruptcy Court on or before the Administrative Bar Date, or (b) Allowed under section 503(b) of the Bankruptcy Code, except to the extent the holder of such Claim agrees to be treated differently.  Administrative Claims include, but are not limited to, (i) any actual and necessary expenses of preserving the Estate incurred during the Chapter 11 Case, (ii) any actual and necessary expenses of operating the Debtor's business incurred during the Chapter 11 Case, (iii) any indebtedness or obligations incurred or assumed by the Debtor in connection with the conduct of its business as a debtor in possession, or for the acquisition or lease of property by, or for the rendition of services to, the Debtor as debtor in possession, (iv) obligations pursuant to executory contracts assumed by the Debtor pursuant to an order of the Bankruptcy Court, (v) all Claims as provided by section 507(b) of the Bankruptcy Code, (vi) all allowances of compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court, (vii) any Allowed Contingent Claims which are granted administrative priority status by Final Order of the Bankruptcy Court, (viii) all fees payable and unpaid under section 1930 of Title 28, United States Code, and (ix) any fees or charges assessed against the Estate under chapter 123 of Title 28, United States Code.

     1.2   <u>Administrative Claims Bar Date</u>.  The date thirty (30) days after the Effective Date or such other date(s), if any, as determined by order of the Bankruptcy Court, by which all requests for allowance of Administrative Claims must be filed with the Bankruptcy Court.  The Administrative Claims Bar Date shall not apply to fees and expenses of Professionals incurred after the Confirmation Date.

     1.3   <u>Agrifund.</u>  Agrifund, LLC.

1.4    <u>Allowed Administrative Claim</u>.  All or that portion of any Administrative Claim that is or has become an Allowed Claim.

1.5    <u>Allowed Claim</u>.  Any Claim against the Debtor (i) proof of which was filed on or before the date designated by the Bankruptcy Court as the last date for filing proofs of claims against the Debtor or, if no proof of claim is filed, which has been or hereafter is listed by the Debtor in its Schedules, as liquidated in amount and not disputed or contingent and, in either case, a Claim as to which no objection to the allowance thereof has been interposed within the applicable period of limitation fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or (ii) in favor of any Person arising from a judgment against such Person in any Avoidance Action (if the effect of such judgment gives such Person an Allowed General Unsecured Claim), or (iii) any Claim as to which the Bankruptcy Court has entered a Final Order allowing the Claim.  A Disputed Claim shall be an Allowed Claim if, and only to the extent that, a Final Order has been entered allowing such Disputed Claim.  The term "Allowed," when used to modify a reference in this Plan to any Claim or class of Claims, shall mean a Claim (or any Claim in any such class) that is allowed (e.g., an Allowed Secured Claim is a Claim that has been Allowed to the extent of the value of any interest in property of the Estate securing such Claim), as determined by the Bankruptcy Court pursuant to section 506(a) of the Bankruptcy Code.  Unless otherwise specified in this Plan or in the Final Order of the Bankruptcy Court allowing such Claim, "Allowed Claim" shall not include interest on the amount of such Claim from and after the Petition Date.

1.6    <u>Assumed Agreement</u>.  The Debtor's unexpired leases and other executory contracts that are being assumed pursuant to the Plan.

1.7    <u>Avoidance Action</u>.  Any and all actions which a trustee, debtor in possession, or other appropriate party in interest may assert on behalf of the Estate under the Bankruptcy Code, including actions pursuant to sections 542, 543, 544, 545, 546, 547, 548, 549, 550, and/or 551 of the Bankruptcy Code.

1.8    <u>Avoidance Action Claims</u>.  Claims asserted by parties pursuant to sections 502(d) and/or 502(h) of the Bankruptcy Code in connection with any Avoidance Action(s) brought by the Debtor against such parties.

1.9    <u>Ballot</u>.  The document used in voting on the Plan that must be executed and delivered by holders of Claims entitled to vote on the Plan.

1.10    <u>Bankruptcy Administrator</u>.  The United States Bankruptcy Administrator for the Western District of North Carolina.

1.11    <u>Bankruptcy Code</u>.  The Bankruptcy Reform Act of 1978, as amended, and memorialized in Title 11 of the United States Code, 11 U.S.C. § 101 *et seq.*

1.12    <u>Bankruptcy Court</u>.  The United States Bankruptcy Court for the Western District of North Carolina.

1.13    <u>Bankruptcy Rules</u>.  The Federal Rules of Bankruptcy Procedure and the local rules of the Bankruptcy Court, as applicable to the Chapter 11 Case.

1.14 <u>Baucom</u>.  Charlie Baucom, the sole member of the Debtor

1.15 <u>BMO.</u>  BMO Harris Bank NA

1.16 <u>Business Day</u>.  Any day other than a Saturday, Sunday, or other day on which commercial banks in the State of North Carolina are authorized or required by law to close.

1.17 <u>Cash</u>.  Cash and readily marketable securities or instruments including, without limitation, readily marketable direct obligations of the United States of America or agencies or instrumentalities thereof, time certificates of deposit issued by any bank, and commercial paper.

1.18 <u>Caterpillar</u>.  Caterpillar Financial Services Corporation.

1.19 <u>Chapter 11 Case</u>.  The Chapter 11 bankruptcy case of Bentwood Farms, LLC, (Case No. 18-31823), pending in the Bankruptcy Court.

1.20 <u>Claim</u>.  Any right to payment from the Estate or the Consolidated Estate, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, and arising at any time before the Effective Date or relating to any event that occurred before the Effective Date; or any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from the Estate or the Consolidated Estate, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured, and arising at any time before the Effective Date or relating to any event that occurred before the Effective Date.

1.21 <u>Class</u>.  Means a classification of Allowed Claims for the purposes of treatment and distributions under this Plan.

1.22 <u>Confirmation Date</u>.  The date upon which the Bankruptcy Court enters the Confirmation Order confirming this Plan.

1.23 <u>Confirmation Hearing</u>.  The hearing before the Bankruptcy Court to consider confirmation of this Plan.

1.24 <u>Confirmation Order</u>.  An order of the Bankruptcy Court confirming this Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

1.25 <u>Contingent Claim</u>.  A Claim that is either contingent or unliquidated on or immediately before the Confirmation Date.

1.26 <u>Creditor</u>.  Any Person that holds a Claim against the Consolidated Estate.

1.27 <u>Debtor</u>.  Bentwood Farms, LLC

1.28 <u>Disclosure Statement</u>.  The disclosure statement filed with the Bankruptcy Court with respect to this Plan, pursuant to section 1125 of the Bankruptcy Code, either in its present form or as it may be altered, amended, or modified from time to time.

1.29   Disputed Claim.  A Claim which is the subject of a timely objection interposed by the Debtor, if at such time such objection remains unresolved; provided, however, that the Bankruptcy Court may determine the amount of a Disputed Claim for purposes of allowance pursuant to section 502(c) of the Bankruptcy Code; provided, further, that the Debtor, in its sole discretion, may elect to treat the portion of a Disputed Claim, if any, that is not in dispute as an Allowed Claim, with the disputed portion remaining a Disputed Claim.

1.30   Disputed Claims Reserve.  The interest bearing reserve account(s) established by the Reorganized Debtor pursuant to Section 8.3 of this Plan from which all cash distributions under the Plan shall be made with respect to all Disputed Claims.

1.31   Effective Date.  The Business Day on which all of the conditions set forth in Article 10 of this Plan shall have been satisfied or waived.

1.32   Equipment Lease.  Agreement between Bentwood Farms, LLC and Farmland Partners dated March 2, 2019 for certain equipment including but not limited to two row crop tractors, combine and attachments, grain cart, planter and hopper bottoms.

1.33   Equity Interest.  Any interest in the Debtor represented by any class or series of capital stock or membership interests of the Debtor prior to the Petition Date, and any and all warrants, options, convertible, or exchangeable securities, subscriptions, rights (including any preemptive rights), appreciation rights, calls, or commitments of any character whatsoever relating to any such interest in the Debtor.  Equity Interests also include, without limitation, all Claims arising from rescission of a purchase or sale of an Equity Interest, for damages arising from the purchase or sale of such an Equity Interest, or for reimbursement or contribution allowed under section 502 of the Bankruptcy Code on account of such a Claim.

1.34   Estate.  The bankruptcy estate of the Debtor, including all interests in property that the Debtor holds.

1.35   Farm Credit.  Farm Credit Leasing Services Corp.

1.36   Farmland Partners.  FPI Properties LLC, FPI Colorado LLC and FPI Agribusiness, Inc.

1.37   Final Order.  An order that is no longer subject to appeal, certiorari proceeding or other proceeding for review or rehearing, and as to which no appeal, certiorari proceeding, or other proceeding for review or rehearing shall then be pending.

1.38   FPI Pivot Note. That Loan and Security Agreement dated April 2, 2018 from Bentwood Farms, LLC, Charlie Bennett Baucom and Brittany Little Baucom to FPI Agribusiness, Inc. in the amount of $115,617.64 for financing the Pivot and John Deere Planter, Stock Number 1A790CCEA755704.

1.39   General Unsecured Claim.  Any Unsecured Claim, other than an Administrative Claim, an Other Priority Claim, or a Priority Tax Claim.  Subject to the provisions of this Plan, Allowed General Unsecured Claims may include, without limitation, Allowed Unsecured Deficiency Claims, and any Claim in favor of any Person arising from a judgment against such

Person in any Avoidance Action (if the effect of such judgment gives such Person an Allowed General Unsecured Claim).

1.40  <u>Interest</u>.  Any right, claim, or entitlement arising out of or against an Equity Interest.

1.41  <u>John Deere</u>.  Deere Credit, Inc. and Deere & Company.

1.42  <u>Judgment</u>.  A judgment that is no longer subject to appeal, certiorari proceeding or other proceeding for review or rehearing, and as to which no appeal, certiorari proceeding, or other proceeding for review or rehearing shall then be pending.

1.43  <u>Marketing Plan</u>.  The agreement between the Debtor and Iron Horse Auction Company, which provides for the marketing and sale of Mill Bay.

1.44  <u>Mill Bay</u>.  Approximately 1,071 acres of real property located in and around Marion County, South Carolina owned by the Debtor on the Petition Date.

1.45  <u>Net After Tax Cash Flow</u>.  Net income from the Reorganized Debtor's federal informational tax return (excluding any cancellation of debt income), less estimated federal and state income taxes based on the highest tax rate then in effect, less secured debt service, less distributions on Allowed Priority Tax Claims, less cash disbursements for capital assets and an amount that maintains no less than a $100,000 cash reserve in the Debtor's operating account.

1.46  <u>Other Priority Claims</u>.  Any Claim to the extent entitled to priority in payment under sections 507(a)(2) through 507(a)(7) of the Bankruptcy Code.

1.47  <u>Person</u>.  An individual, a corporation, a partnership, an association, a joint stock company, a joint venture, an estate, a trust, an unincorporated organization, or a government, governmental unit or any subdivision thereof or any other entity.

1.48  <u>Petition Date</u>.  December 7, 2018, the date the Chapter 11 Case was filed.

1.49  <u>Pivot</u>.  That Zimmatic Pivot, Stock Number LE6120 securing the FPI Pivot Note.

1.50  <u>Plan</u>.   This Plan of Reorganization, as it may be from time to time modified, amended or supplemented, together with any exhibits thereto.

1.51  <u>Priority Non-Tax Claim</u>.  Any Claim arising prior to the Petition Date entitled to priority in payment under Sections 507(a)(1)-(a)(7) of the Bankruptcy Code.

1.52  <u>Priority Tax Claim</u>.  Any Claim arising prior to the Petition Date entitled to priority in payment under section 507(a)(8) of the Bankruptcy Code.

1.53  <u>Pro Rata Share</u>.  As of any certain date, with respect to any Allowed Claim in any Class, the proportionate share that such Allowed Claim bears to the aggregate amount of all Claims, including Disputed Claims, in such Class.

1.54    Professional.    Any attorney, accountant, appraiser, auctioneer, or other professional person retained and employed by the Estate in the Chapter 11 Cases in accordance with sections 327 and/or 328 of the Bankruptcy Code.

1.55    Rabo.  Rabo Agrifinance LLC.

1.56    Reorganized Debtor.  The Debtor, as reorganized and re-vested with all of the assets of the Estate pursuant to this Plan.

1.57    Row Crop Farm Leases.  That Farm Lease dated February 14, 2017 between FPI Colorado LLC, as Landlord, and Bentwood Farms, LLC, as Tenant for approximately 1,864 acres of tillable land located in Marion and Clarendon Counties, South Carolina, as attached hereto as Exhibit 1.

1.58    Schedules.  The Schedules of Assets and Liabilities, and any amendments thereto, filed by the Debtor in the Chapter 11 Cases under section 521 of the Bankruptcy Code.

1.59    Second Line of Credit.  Second Line of Credit and security interest dated April __, 2019 between FPI Properties, LLC to Bentwood Farms, LLC and Charlie Baucom in the amount of $1,500,000.00.

1.60    Secured Claim.  A Claim to the extent of the value, of any interest in property of the Estate securing such Claim, as determined pursuant to section 506(a) or 1111(b) of the Bankruptcy Code.  To the extent that the value of such interest is less than the amount of the Claim which has the benefit of such security, such Claim is an Unsecured Deficiency Claim unless, in any such case, the class of which such Claim is a part makes a valid and timely election under section 1111(b) of the Bankruptcy Code to have such Claim treated as a Secured Claim to the extent allowed.

1.61    Sod Farms.  Those farms in Dillon and Marion Counties, South Carolina owned by Farmland Partners and known as the Sellers (270 acres of tillable land) and Gasque/Gaddy (126 acres of tillable land) farms, on which the Debtor cultivates sod.

1.62    Sod Farm Leases.  Those agreements dated October 6, 2017, as amended in the Bankruptcy Case, and December 31, 2018 between Farmland Partners, as Landlord, and Bentwood Farms, LLC, as Tenant for lease of the Sod Farms.

1.63    Southern States.  Southern States Cooperative, Incorporated.

1.64    Taxes.    All income, franchise, excise, sales, use, employment, withholding, property, payroll, and other taxes, assessments, and governmental charges, together with any interest, penalties, additions to tax, fines, and similar amounts relating thereto, imposed or collected by any federal, state, local, or foreign governmental authority.

1.65    TCF.  TCF Equipment Finance, a division of TCF National Bank.

1.66    Truliant.  Truliant Federal Credit Union.

1.67     Unruh Lease.   That agreement dated December 16, 2018 between Farmland Partners, as Landlord, and Bentwood Farms, LLC, as Tenant for lease of 320 acres of tillable land located in Lee County, South Carolina known to the parties as the Unruh Farm.

1.68     Unsecured Claim.   A Claim not secured by a charge against or interest in property in which the Estate or the Consolidated Estate has an interest, including any Unsecured Deficiency Claim, and any Claim arising at any time under Bankruptcy Rule 3002(c)(3).

1.69     Unsecured Deficiency Claim.   A Claim by a Creditor arising out of the same transaction as a Secured Claim to the extent that the value, as determined by the Bankruptcy Court pursuant to section 506(a) of the Bankruptcy Code or by stipulation, of such Creditor's interest in property of the Estate securing such Claim is less than the amount of the Claim which has the benefit of such security as provided by section 506(a) of the Bankruptcy Code.

1.70     Voting Deadline.   The date set in an order of the Bankruptcy Court as the deadline for the return of Ballots accepting or rejecting the Plan.

1.71     Other Definitions.   Unless the context otherwise requires, any capitalized term used and not defined herein or elsewhere in this Plan but that is defined in the Bankruptcy Code or Bankruptcy Rules shall have the meaning set forth therein.   Wherever from the context it appears appropriate, each term stated in either of the singular or the plural shall include the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, the feminine and the neuter.   The words "herein," "hereof," "hereto," "hereunder," and others of similar inference refer to this Plan as a whole and not to any particular article, section, subsection, or clause contained in this Plan.   The word "including" shall mean "including without limitation."

## ARTICLE 2
## PROVISIONS REGARDING ALLOWED ADMINISTRATIVE
## CLAIMS AND ALLOWED PRIORITY TAX CLAIMS

2.1     *Administrative Claims and Priority Tax Claims are Not Classified in this Plan*. Administrative Claims and Priority Tax Claims are not classified and are not entitled to vote to accept or reject the Plan.   The treatment of and consideration to be received by holders of Allowed Administrative Claims and Allowed Priority Tax Claims pursuant to this Article 2 of the Plan shall be in full and complete satisfaction, settlement, release, and discharge of such Claims.   The Debtor's obligations in respect of such Allowed Administrative and Priority Tax Claims shall be satisfied in accordance with the terms of this Plan.

2.2     *Administrative Claims Bar Date*.   Unless otherwise ordered by the Bankruptcy Court, requests for payment of Administrative Claims, including all applications for final allowance of compensation and reimbursement of expenses of Professionals incurred before the Confirmation Date, must be filed and served no later than thirty (30) days after the Effective Date.   Any Person required to file and serve a request for payment of an Administrative Claim and who fails to timely file and serve such request, shall be forever barred, estopped, and enjoined from asserting such Claim or participating in distributions under the Plan on account thereof.   The Administrative Claims Bar Date shall not apply to fees and expenses of

Professionals incurred after the Effective Date, and to fees due under Section 1930 of title 28 of the United States Code (which quarterly fees shall be paid pursuant to Section 11.1 of the Plan).

2.3   ***Treatment of Administrative Claims***.   Except to the extent the holder of an Allowed Administrative Claim agrees otherwise, each holder of an Allowed Administrative Claim shall be paid, in respect of such Allowed Claim, the full amount thereof in Cash (or such other form as is agreed upon by any holder of an Allowed Administrative Claim) as soon as practicable after the later of (a) the Effective Date and (b) the date on which such Claim becomes an Allowed Claim, except that Allowed Administrative Claims arising in the ordinary course of business shall, if due at a later date pursuant to its terms, be paid when otherwise due.

2.4   ***Treatment of Priority Tax Claims***.   Each holder of an Allowed Priority Tax Claim shall be paid the Allowed Amount of its Allowed Priority Tax Claim, at the option of the Reorganized Debtor: (a) in full, in Cash, on the Effective Date or as soon as practicable thereafter; (b) upon such other terms as may be mutually agreed upon between such holder of an Allowed Priority Tax Claim and the Reorganized Debtor; or (c) in equal, monthly Cash payments starting within 60 days following the Effective Date, in an aggregate amount equal to such Allowed Priority Tax Claim, together with interest at such rate as required by Section 511 of the Bankruptcy Code or otherwise as required by Section l129(a)(9)(C) or (D) of the Bankruptcy Code, such that the full amount of each Allowed Priority Tax Claim is paid in full within five (5) years from the Petition Date.

## ARTICLE 3
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

3.1   ***Class 1:  Allowed Secured Tax Claims***

    3.1.1        *Classification.*

Class 1 consists of all Allowed Secured Tax Claims.

    3.1.2        *Treatment.*

These Claims shall be treated as secured obligations of the Reorganized Debtor.  Each holder of an Allowed Secured Tax Claim shall be paid the Allowed Amount of its Allowed Secured Tax Claim, at the option of the Reorganized Debtor: (a) in full, in Cash, on the Effective Date or as soon as practicable thereafter; (b) upon such other terms as may be mutually agreed upon between such holder of an Allowed Secured Claim and the Reorganized Debtor; or (c) in equal, monthly Cash payments starting within 60 days following the Effective Date, in an aggregate amount equal to such Allowed Secured Tax Claim, together with interest at such rate as required by Section 511 of the Bankruptcy Code or otherwise as required by Section l129(a)(9)(C) or (D) of the Bankruptcy Code, such that the full amount of each Allowed Secured Tax Claim is paid in full within five (5) years from the Petition Date.  Each holder of an Allowed Secured Tax claim shall retain its existing liens, which shall retain the same priority that existed on the Petition Date.

    3.1.3        *Impairment and Voting*

Class 1 is impaired by the Plan. The holders of Class 1 Claims are entitled to vote to accept or reject the Plan.  For purposes of voting, each holder of a Secured Tax Claim shall be considered to be the sole member of a separate Class.

3.2 **Class 2:  Allowed Secured Claims of Agrifund**

    3.2.1 *Classification.*

Class 2 consists of the Allowed Secured Claims of Agrifund.

    3.2.2 *Treatment.*

This Claim shall be treated as a secured obligation of the Reorganized Debtor in an amount: (i) up to the value of the collateral securing the Claim as determined by the Bankruptcy Court upon the Debtor's motion pursuant to section 506 of the Bankruptcy Code, or (ii) as otherwise agreed upon by the Debtor and Agrifund, less any payments made by the Debtor to Agrifund during the Chapter 11 Case.  Payments on account of Agrifund's Allowed Secured Claim shall begin within 365 days following the Effective Date and shall be made in equal monthly installments of principal and interest, with interest at 5.5% per annum, over 60 months with no prepayment penalty.  Agrifund shall retain its lien with the priority thereof, as it existed on the Petition Date pursuant to §1129(b)(2)(A)(i)(I) of the Bankruptcy Code until this Allowed Class 2 Claim is satisfied as set forth in the Plan.  Any Allowed Unsecured Deficiency Claim of Agrifund resulting from bifurcation of its Claim shall be treated in Class 13 of the Plan.

    3.2.3 *Impairment and Voting*

Class 2 is impaired by the Plan. The holder of the Class 2 Claim is entitled to vote to accept or reject the Plan.

3.3 **Class 3: Allowed Secured Claim of BMO**

    3.3.1 *Classification*

Class 3 consists of the Allowed Secured Claim of BMO.

    3.3.2 *Treatment*

This Claim shall be treated as a secured obligation of the Reorganized Debtor in the principal amount of $17,900.00, less any payments made by the Debtor to BMO during the Chapter 11 Case.  Payments on account of BMO's Allowed Secured Claim shall begin within 60 days following the Effective Date and shall be made in equal monthly installments of principal and interest, with interest at 5.5% per annum, over 72 months with no prepayment penalty. BMO shall retain its lien with the priority thereof, as it existed on the Petition Date pursuant to §1129(b)(2)(A)(i)(I) of the Bankruptcy Code until this Allowed Class 3 Claim is satisfied as set forth in the Plan.  Any Allowed Unsecured Deficiency Claim of BMO resulting from bifurcation of its Claim shall be treated in Class 13 of the Plan.

### 3.3.3    *Impairment and Voting*

Class 3 is impaired by the Plan. The holder of the Class 3 Claim is entitled to vote to accept or reject the Plan.

### 3.4    **Class 4:  Allowed Secured Claim of Farm Credit**

#### 3.4.1    *Classification*

Class 4 consists of the Allowed Secured Claim of Farm Credit.

#### 3.4.2    *Treatment*

This Claim shall be treated as a secured obligation of the Reorganized Debtor in an amount: (i) up to the value of the collateral securing the Claim as determined by the Bankruptcy Court upon the Debtor's motion pursuant to section 506 of the Bankruptcy Code, or (ii) as otherwise agreed upon by the Debtor and Farm Credit, less any payments made by the Debtor to Farm Credit during the Chapter 11 Case.  Payments on account of Farm Credit's Allowed Secured Claim shall begin within 60 days following the Effective Date and shall be made in equal monthly installments of principal and interest, with interest at 5.5% per annum, over 60 months with no prepayment penalty.  Farm Credit shall retain its lien with the priority thereof, as it existed on the Petition Date pursuant to §1129(b)(2)(A)(i)(I) of the Bankruptcy Code until this Allowed Class 11 Claim is satisfied as set forth in the Plan.  Any Allowed Unsecured Deficiency Claim of Farm Credit resulting from bifurcation of its Claim shall be treated in Class 13 of the Plan.

#### 3.4.3    *Impairment and Voting*

Class 4 is impaired by the Plan. The holder of the Class 4 Claim is entitled to vote to accept or reject the Plan.

### 3.5    **Class 5:  Allowed Secured Claim of Farmland Partners on Equipment**

#### 3.5.1    *Classification*

Class 5 consists of the Allowed Secured Claim of Farmland Partners on equipment based upon the FPI Pivot Note.

#### 3.5.2    *Treatment*

This Claim shall be treated as a secured obligation of the Reorganized Debtor in an amount: (i) up to the value of the collateral securing the Claim (the Pivot) as determined by the Bankruptcy Court upon the Debtor's motion pursuant to section 506 of the Bankruptcy Code, or (ii) as otherwise agreed upon by the Debtor and Farmland Partners, less any payments related to the collateral securing this Claim made by the Debtor to Farmland Partners during the Chapter 11 Case.  Farmland Partners' Allowed Secured Claim on equipment shall be satisfied via the surrender of the Pivot to Farmland Partners free of all liens, claims, interests, and encumbrances pursuant to Code Section 1129(b)(2)(A)(iii).  The filing of this Plan shall constitute a motion for

such relief to the extent necessary.  Entry of the Confirmation Order shall constitute transfer of title of the collateral securing the FPI Pivot Note.  Any Allowed Unsecured Deficiency Claim of Farmland Partners resulting from bifurcation of its Claim shall be treated in Class 13 of the Plan.

### 3.5.3 *Impairment and Voting*

Class 5 is impaired by the Plan. The holder of the Class 5 Claim is entitled to vote to accept or reject the Plan.

### 3.6 **Class 6:  Allowed Secured Claim of Farmland Partners on Past Due Rent**

#### 3.6.1 *Classification*

Class 6 consists of the Allowed Secured Claim of Farmland Partners for past due rent on the Row Crop Leases.

#### 3.6.2 *Treatment*

This Claim shall be treated as a secured obligation of the Reorganized Debtor in an amount: (i) up to the value of the collateral securing the Claim as determined by the Bankruptcy Court upon the Debtor's motion pursuant to section 506 of the Bankruptcy Code, or (ii) as otherwise agreed upon by the Debtor and Farmland Partners, less any payments made by the Debtor to Farmland Partners during the Chapter 11 Case.

Farmland Partners' Allowed Secured Claim on Past Due Rents shall be paid in full within 90 days of the Effective Date, or as otherwise agreed by the Debtor and Farmland Partners, with no prepayment penalty.

Farmland Partners shall retain its lien with the priority thereof, as it existed on the Petition Date pursuant to 1129(b)(2)(A)(i)(I) of the Bankruptcy Code until this Allowed Class 6 Claim is satisfied as set forth in the Plan.  Any amount still owing to Farmland Partners for past due rents after full payment of its Allowed Secured Claim on Past Due Rents shall be treated as an Administrative Claim to be paid in full pursuant to Article 2.3 of the Plan or as otherwise agreed by the Debtor and Farmland Partners.

#### 3.6.3 *Impairment and Voting*

Class 6 is impaired by the Plan. The holder of the Class 6 Claim is entitled to vote to accept or reject the Plan.

### 3.7 **Class 7:  Allowed Secured Claim of John Deere**

#### 3.7.1 *Classification*

Class 7 consists of the Allowed Secured Claim of John Deere

### 3.7.2 *Treatment*

This Claim shall be treated as a secured obligation of the Reorganized Debtor in an amount: (i) up to the value of the collateral securing the Claim as determined by the Bankruptcy Court upon the Debtor's motion pursuant to section 506 of the Bankruptcy Code, or (ii) as otherwise agreed upon by the Debtor and John Deere, less any payments made by the Debtor to John Deere during the Chapter 11 Case. Payments on account of John Deere's Allowed Secured Claim shall begin within 60 days following the Effective Date and shall be made in equal monthly installments of principal and interest, with interest at 5.5% per annum, over 60 months with no prepayment penalty. John Deere shall retain its lien with the priority thereof, as it existed on the Petition Date pursuant to §1129(b)(2)(A)(i)(I) of the Bankruptcy Code until this Allowed Class 7 Claim is satisfied as set forth in the Plan. Any Allowed Unsecured Deficiency Claim of John Deere resulting from bifurcation of its Claim shall be treated in Class 13 of the Plan.

### 3.7.3 *Impairment and Voting*

Class 7 is impaired by the Plan. The holder of the Class 7 Claim is entitled to vote to accept or reject the Plan.

### 3.8 *Class 8: Allowed Secured Claim of Rabo*

### 3.8.1 *Classification*

Class 8 consists of the Allowed Secured Claim of Rabo

### 3.8.2 *Treatment*

This Claim shall be treated as a secured obligation of the Reorganized Debtor in an amount: (i) up to the value of the collateral securing the Claim as determined by the Bankruptcy Court upon the Debtor's motion pursuant to section 506 of the Bankruptcy Code, or (ii) as otherwise agreed upon by the Debtor and Rabo, less any payments made by the Debtor to Rabo during the Chapter 11 Case. Upon the occurrence of the Confirmation Date, the Debtor shall market and sell Mill Bay according to the agreed terms of the Marketing Plan. Notwithstanding the forgoing, payments on account of Rabo's Allowed Secured Claim shall begin within 365 days following the Effective Date and shall be made in equal monthly installments of principal and interest, with interest at 5.5% per annum, over 60 months with no prepayment penalty. In calculating such payments, the Debtor shall receive a credit against the Allowed Secured Claim of Rabo in an amount equal to the value of Mill Bay (as determined by the Court, as agreed upon by the Debtor and Rabo, or if already sold when payments come due, the gross sale price of Mill Bay). Rabo shall retain its lien with the priority thereof, as it existed on the Petition Date pursuant to §1129(b)(2)(A)(i)(I) of the Bankruptcy Code until this Allowed Class 8 Claim is satisfied as set forth in the Plan. Any Allowed Unsecured Deficiency Claim of Rabo resulting from bifurcation of its Claim shall be treated in Class 13 of the Plan.

### 3.8.3 *Impairment and Voting*

Class 8 is impaired by the Plan.  The holders of Class 8 Claims are entitled to vote to accept or reject the Plan.

3.9      **Class 9:  Allowed Secured Claim of Southern States**

     3.9.1          *Classification*

Class 9 consists of the Allowed Secured Claim of Southern States.

     3.9.2          *Treatment*

This Claim shall be treated as a secured obligation of the Reorganized Debtor in an amount: (i) up to the value of the collateral securing the Claim as determined by the Bankruptcy Court upon the Debtor's motion pursuant to section 506 of the Bankruptcy Code, or (ii) as otherwise agreed upon by the Debtor and Southern States, less any payments made by the Debtor to Southern States during the Chapter 11 Case.  Payments on account of Southern States' Allowed Secured Claim shall begin within 365 days following the Effective Date and shall be made in equal monthly installments of principal and interest, with interest at 5.5% per annum, over 60 months with no prepayment penalty.  Southern States shall retain its lien with the priority thereof, as it existed on the Petition Date pursuant to §1129(b)(2)(A)(i)(I) of the Bankruptcy Code until this Allowed Class 9 Claim is satisfied as set forth in the Plan.  Any Allowed Unsecured Deficiency Claim of Southern States resulting from bifurcation of its Claim shall be treated in Class 13 of the Plan.

     3.9.3          *Impairment and Voting*

Class 9 is impaired by the Plan. The holders of Class 9 Claims are entitled to vote to accept or reject the Plan.

3.10     **Class 10:  Allowed Secured Claim of TCF**

     3.10.1         *Classification*

Class 10 consists of the Allowed Secured Claim of TCF.

     3.10.2         *Treatment*

This Claim shall be treated as a secured obligation of the Reorganized Debtor in an amount: (i) up to the value of the collateral securing the Claim as determined by the Bankruptcy Court upon the Debtor's motion pursuant to section 506 of the Bankruptcy Code, or (ii) as otherwise agreed upon by the Debtor and TCF, less any payments made by the Debtor to TCF during the Chapter 11 Case.  Payments on account of TCF's Allowed Secured Claim shall begin within 60 days following the Effective Date and shall be made in equal monthly installments of principal and interest, with interest at 5.5% per annum, over 60 months with no prepayment penalty.  TCF shall retain its lien with the priority thereof, as it existed on the Petition Date

pursuant to §1129(b)(2)(A)(i)(I) of the Bankruptcy Code until this Allowed Class 10 Claim is satisfied as set forth in the Plan. Any Allowed Unsecured Deficiency Claim of TCF resulting from bifurcation of its Claim shall be treated in Class 13 of the Plan.

### 3.10.3    *Impairment and Voting*

Class 10 is impaired by the Plan. The holders of the Class 10 Equity Interests are entitled to vote to accept or reject the Plan.

### 3.11    ***Class 11: Allowed Secured Claim of Truliant***

### 3.11.1    *Classification*

Class 11 consists of the Allowed Secured Claim of Truliant

### 3.11.2    *Treatment*

This Claim shall be treated as a secured obligation of the Reorganized Debtor in an amount: (i) up to the value of the collateral securing the Claim as determined by the Bankruptcy Court upon the Debtor's motion pursuant to section 506 of the Bankruptcy Code, or (ii) as otherwise agreed upon by the Debtor and Truliant, less any payments made by the Debtor to Truliant during the Chapter 11 Case. At the option of the Reorganized Debtor, Truliant's Allowed Secured Claim shall be paid either (i) in full on the effective date or (ii) in equal monthly installments of principal and interest, beginning within 60 days following the Effective Date, with interest at 5.5% per annum, over 60 months with no prepayment penalty. Truliant shall retain its lien with the priority thereof, as it existed on the Petition Date pursuant to §1129(b)(2)(A)(i)(I) of the Bankruptcy Code until this Allowed Class 11 Claim is satisfied as set forth in the Plan. Any Allowed Unsecured Deficiency Claim of Truliant resulting from bifurcation of its Claim shall be treated in Class 13 of the Plan.

### 3.11.3    *Impairment and Voting*

Class 11 is impaired by the Plan. The holder of the Class 11 Claim is entitled to vote to accept or reject the Plan.

### 3.12    ***Class 12: Allowed Secured Claim of Caterpillar***

### 3.12.1    *Classification*

Class 3 consists of the Allowed Secured Claim of Caterpillar.

### 3.12.2    *Treatment*

This Claim shall be treated as a secured obligation of the Reorganized Debtor in the principal amount of $31,025.13 less any payments made by the Debtor to Caterpillar during the Chapter 11 Case. Payments on account of Caterpillar's Allowed Secured Claim shall begin within 60 days following the Effective Date and shall be made in equal monthly installments of

principal and interest, with interest at 6% per annum, over 60 months with no prepayment penalty.  Caterpillar shall retain its lien with the priority thereof, as it existed on the Petition Date pursuant to §1129(b)(2)(A)(i)(I) of the Bankruptcy Code until this Allowed Class 12 Claim is satisfied as set forth in the Plan.  Any Allowed Unsecured Deficiency Claim of Caterpillar resulting from bifurcation of its Claim shall be treated in Class 13 of the Plan.

### 3.12.3  *Impairment and Voting*

Class 12 is impaired by the Plan. The holders of Class 12 Claims are entitled to vote to accept or reject the Plan.

### 3.12     *Class 13:  Allowed Unsecured Deficiency Claims*

#### 3.13.1        *Classification*

Class 12 consists of the Allowed Unsecured Deficiency Claims.

#### 3.13.2        *Treatment*

These Claims shall be treated as unsecured obligations of the Reorganized Debtor.  Each holder of an Allowed Unsecured Deficiency Claim will receive a Pro Rata Share of 33% of the Reorganized Debtors' Net After Tax Cash Flow for years 2019 - 2021.  Said distributions will be paid in three annual installments, on or before May 31 of years 2020 - 2022, respectively.

#### 3.13.3        *Impairment and Voting*

Class 13 is impaired by the Plan. The holders of Class 13 Claims are entitled to vote to accept or reject the Plan.

### 3.14     *Class 14:  Allowed General Unsecured Claims*

#### 3.14.1        *Classification*

Class 14 consists of all Allowed General Unsecured Claims, including any Allowed Unsecured Claims not otherwise classified in this Plan..

#### 3.14.2        *Treatment*

These Claims shall be treated as unsecured obligations of the Reorganized Debtor.  Each holder of an Allowed General Unsecured Claim will receive a Pro Rata Share of 67% of the Reorganized Debtors' Net After Tax Cash Flow for years 2019 - 2021.  Said distributions will be paid in three annual installments, on or before May 31 of years 2020 - 2022, respectively.

#### 3.14.3        *Impairment and Voting*

Class 14 is impaired by the Plan. The holders of Class 14 Claims are entitled to vote to accept or reject the Plan.

3.15    ***Class 15:  Equity Interests in the Debtor***

     3.15.1    *Classification*

Class 15 consists of consists of the Equity Interests in the Debtor, held by Baucom (100%).

     3.15.2    *Treatment*

In return for a $10,000 cash contribution to the Reorganized Debtor on or before the Effective Date, the holder of the Equity Interests in the Debtor will retain his interests in the Reorganized Debtor.

     3.15.3    *Impairment and Voting*

Class 15 is impaired by the Plan. The holder of the Class 15 Claim is entitled to vote to accept or reject the Plan.

## ARTICLE 4
## ACCEPTANCE OR REJECTION OF THE PLAN

    4.1    ***Impaired Classes Vote.***  Each holder of a Claim or Interest in an impaired Class receiving or retaining anything under this Plan is entitled to vote to accept or reject this Plan to the extent and in the manner provided in the Plan, the Bankruptcy Code and the Bankruptcy Rules, or in any voting procedures order.

    4.2    ***Acceptance by Impaired Classes of Claims.***  Acceptance of this Plan by any Impaired Class entitled to vote shall be determined in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any voting procedures order entered by the Bankruptcy Court.

    4.3    ***Designation of Classes Entitled to Vote.***  Classes 1 through 15 are impaired, and the holders of Claims and Interests in those Classes are entitled to vote on the Plan.

    4.4    ***Nonconsensual Confirmation.***  With respect to any Impaired Class, including any Class of Claims or Interests created pursuant to amendments or modifications to this Plan, that does not accept the Plan, the Debtor will request that the Bankruptcy Court confirm this Plan by Cramdown with respect to any such non-accepting Class or Classes at the Confirmation Hearing, *and the filing of this Plan shall constitute a motion for such relief.*

## ARTICLE 5
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

    5.1    ***Assumption.***  Each executory contract or unexpired lease of the Debtor that has not expired by its own terms before the Effective Date or previously been assumed by the Debtor pursuant to an order of the Bankruptcy Court, shall be *assumed* as of the Effective Date pursuant to Sections 365 and 1123 of the Bankruptcy Code, except for any such contract or lease (i) that is

listed on a "Schedule of Executory Contracts and Unexpired Leases to be Rejected" (to be Filed on or before the day that is seven (7) days prior to the Confirmation Hearing), (ii) that has been previously rejected by the Debtor in Possession pursuant to an order of the Bankruptcy Court, (iii) as to which a motion for rejection of such executory contract or unexpired lease is filed prior to the Effective Date, or (iv) that is added to the "Schedule of Executory Contracts and Unexpired Leases to be Rejected" prior to the Effective Date. Nothing in the Plan, any Plan Exhibit, or any document executed or delivered in connection with the Plan creates any obligation or liability on the part of the Debtor, the Reorganized Debtor, or any other person or entity that is not currently liable for such obligation, with respect to any executory contract or unexpired lease except unless otherwise provided in the Plan.

Any executory contract or unexpired lease assumed pursuant to the Plan shall be fully enforceable by the Reorganized Debtor in accordance with the terms thereof, and shall include all written modifications, amendments, and supplements of said executory contract or unexpired lease and, as with respect to executory contracts or unexpired leases that relate to real property, shall include all written agreements and leases appurtenant to the premises, including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, powers, uses, reciprocal easements, and any other interests in real property or rights *in rem* related to such premises. Listing a contract or lease on the "Schedule of Executory Contracts and Unexpired Leases to be Rejected" is not an admission by the Debtor or the Reorganized Debtor that such contract is an executory contract or unexpired lease or that the Debtor or the Reorganized Debtor has any liability thereunder.

The Debtor reserves the right at any time before the Effective Date to amend the "Schedule of Executory Contracts and Unexpired Leases to be Rejected" to: (a) delete any executory contract or unexpired lease listed on the "Schedule of Executory Contracts and Unexpired Leases to be Rejected," thus providing for its assumption under the Plan, or (b) add any executory contract or unexpired lease to the "Schedule of Executory Contracts and Unexpired Leases to be Rejected," thus providing for its rejection under the Plan. The Debtor shall provide notice of any such amendment of the "Schedule of Executory Contracts and Unexpired Leases to be Rejected" to the other party or parties to the affected executory contract and/or unexpired lease.

Notwithstanding the forgoing, and to the extent not already approved, upon the occurrence of the Confirmation Date, the Debtor hereby assumes the Row Crop Leases, as amended, pursuant to the terms set forth in Exhibit 2 and fully integrated herein. *The filing of this Plan shall constitute a motion for such relief.*

5.2    ***Cure Payments & Related Matters.*** All payments, including all cure payments, adequate assurance or compensation for actual pecuniary loss, that are due or required to be paid or provided by Sections 365(b)(1)(A)-(C) of the Bankruptcy Code (collectively the "Cure Payments") for any executory contract or unexpired lease that is being assumed under the Plan, unless disputed by the Debtor, shall be made by the Reorganized Debtor on the Effective Date.

**The Debtor hereby gives notice that, except as set forth in the Plan and/or Disclosure Statement, there are no Cure Payments due with respect to any executory**

**contracts and unexpired leases to be assumed under the Plan. Any non-debtor party to any executory contract or unexpired lease to be assumed under the Plan that objects to assumption of the executory contract or unexpired lease or believes that a Cure Payment is due in connection with such assumption must file a written objection to the assumption of such executory contract or unexpired lease with no Cure Payment and state in the written objection the grounds for such objection and specifically set forth the amount of any request for a Cure Payment by the deadline established by the Bankruptcy Court for filing objections to confirmation of the Plan.**

Unless the non-debtor party to any executory contract or unexpired lease to be assumed files and serves on the Debtor and its counsel an objection to assumption of such executory contract or unexpired lease for any reason, or asserting that a Cure Payment is required or owed in connection with such assumption, by the deadline established by the Bankruptcy Court for filing objections to confirmation of the Plan, then the executory contracts and unexpired leases shall be assumed, and any default then existing in the executory contract and/or unexpired lease shall be deemed cured as of the Effective Date, and there shall be no other cure obligation or Cure Payment due or owed by anyone, including the Debtor and the Reorganized Debtor, in connection with such assumption of the executory contract or unexpired lease unless otherwise set forth in this Plan. Any Claims for Cure Payments not Filed as part of a written objection to the proposed assumption within such time period will be forever barred from assertion against the Debtor, its Estate, the Reorganized Debtor, and its assets, and the holders of any such Claims are barred from recovering any distributions under the Plan on account thereof unless provided otherwise in this Plan. In the event of an objection to the assumption of executory contracts or unexpired leases regarding the amount of any Cure Payment, or the ability of the Reorganized Debtor to provide adequate assurance of future performance or any other matter pertaining to assumption, (a) the Bankruptcy Court will hear and determine such dispute at the Confirmation Hearing, and (b) in the discretion of the Debtor, the Debtor (i) may assume such disputed executory contract or unexpired lease by curing any default or providing adequate assurance in the manner determined by the Bankruptcy Court, or (ii) the Debtor may reject the executory contract or unexpired lease as of the Effective Date. The Reorganized Debtor shall make any Cure Payment on the later of the Effective Date or the date such Cure Payment is due pursuant to a Final Order, provided, however, that the Reorganized Debtor shall have ten (10) Business Days after any order determining the amount of a disputed Cure Payment becomes a Final Order in which to amend the "Schedule of Executory Contracts and Unexpired Leases to be Rejected" to provide for the rejection of such executory contract or unexpired lease and, in such an event, such executory contract or unexpired lease shall be deemed rejected as of the Effective Date.

Notwithstanding the forgoing, the Debtor acknowledges that it owes Farmland Partners cure payments related to past rents under the Row Crop Leases, which are partially Secured and partially Administrative Claims.  These Claims will be paid pursuant to the treatment set forth in Article 3.6 of the Plan.

5.3      ***Effect of Confirmation Order on Executory Contracts.*** Subject to occurrence of the Effective Date, or the Confirmation Date as to the Row Crop Leases, entry of the Confirmation Order shall constitute approval of such assumptions pursuant to Section 365(a) and 1123(b)(2) of the Bankruptcy Code and a finding by the Bankruptcy Court that each such

assumption is in the best interest of the Debtor, its estate, and all parties in interest. In addition, the Confirmation Order shall constitute a finding of fact and conclusion of law that (i) there are no defaults of the Debtor, no Cure Payments owing (including that there is no compensation due for any actual pecuniary loss), (ii) there is adequate assurance of future performance with respect to each assumed executory contract or unexpired lease, (iii) such assumption is in the best interest of the Debtor and its estate, (iv) upon the Effective Date, the assumed executory contracts or unexpired leases constitute legal, valid, binding and enforceable contracts in accordance with the terms thereof, and (v) the non-debtor counter party to each assumed executory contract or unexpired lease is required to and ordered to perform under and honor the terms of the assumed executory contract or unexpired lease. All executory contracts and unexpired leases assumed under the Plan or during the Chapter 11 Case constitute valid contracts and leases, as applicable, enforceable by the Debtor against the non-debtor counterparties regardless of any cross-default or change of control provisions in any contracts or leases assumed or rejected under the Plan or during the Chapter 11 Case.  Subject to occurrence of the Effective Date, the Confirmation Order shall constitute an order of the Bankruptcy Court approving the rejection as of the Effective Date of all executory contracts and unexpired leases which are not assumed under this Plan, with the rejection effective as of the day before the Petition Date, as being burdensome and not in the best interest of the estate.

   5.4 ***Bar Date for Filing Proofs of Claim Relating to Executory Contracts and Unexpired Leases Rejected Pursuant to the Plan.***  Any Claims for damages arising from the rejection of an executory contract or unexpired lease under this Plan must be Filed within thirty (30) days after the Confirmation Date or, with respect to any executory contracts or unexpired leases which are rejected after the Confirmation Date, by amendment to the "Schedule of Executory Contracts and Unexpired Leases to be Rejected," no later than thirty (30) days after the date of such amendment to the "Schedule of Executory Contracts and Unexpired Leases to be Rejected," or such Claims will be forever barred and unenforceable against the Debtor, the Reorganized Debtor, and its assets and the holders of any such Claims are barred from receiving any distributions under the Plan.

## ARTICLE 6
## DISTRIBUTIONS UNDER THE PLAN

   6.1 ***Distributions Under the Plan.*** The Reorganized Debtor or any distribution agent the Reorganized Debtor may retain shall make all distributions to the holders of Allowed Claims and Allowed Interests that are required under this Plan.  If any litigation now pending is resolved by Final Order or settlement, and the Debtor is ordered to pay any sums to the successful litigant, then such party shall become a creditor, and shall share in distributions to the appropriate Class. Whenever any distribution to be made under this Plan shall be due on a day other than a Business Day, such distribution shall instead be made, without the accrual of any interest, on the immediately succeeding Business Day, but shall be deemed to have been made on the date due.

   6.2 ***Delivery of Distributions.*** Distributions to a holder of an Allowed Claim or Allowed Interest shall be made at the address of such holder as indicated on the Debtor's records. In the event that any such distribution is returned as undeliverable, the Reorganized

Debtor shall use reasonable efforts to determine the current address of the applicable holder, and no distribution to such holder shall be made unless and until the Reorganized Debtor has determined such then current address, provided, however, that if any distribution remains unclaimed after the first anniversary after distribution, such distribution shall be deemed unclaimed property pursuant to Section 347(b) of the Bankruptcy Code and shall become vested in the Reorganized Debtor. In such event, the Claim of the holder for such distribution shall no longer be deemed to be Allowed, and such holder shall be deemed to have waived its rights to such distribution under this Plan pursuant to Section 1143 of the Bankruptcy Code, shall have no further claim or right thereto, and shall not participate in any further distributions under this Plan with respect to such Claim. Checks issued by the Reorganized Debtor in respect of Allowed Claims shall be null and void if not negotiated within ninety (90) days after the date of issuance thereof.

6.3     *Third-Party Agreements.* Distributions to Creditors hereunder will not affect the right of any Entity to levy, garnish, attach, or employ other legal process with respect to such distributions. All subordination agreements entered into by any parties in interest shall be enforceable to the extent permitted by applicable law, and all distributions and payments made pursuant to the Plan shall be subject to applicable law.

6.4     *Manner of Payment Under the Plan.* At the option of the Reorganized Debtor, any payment to be made under the Plan may be made by check or wire transfer from a domestic bank or as otherwise required by applicable agreement.

6.5     *No Fractional Distributions.* No fractional dollars shall be distributed under the Plan. For purposes of distributions, Cash distributions shall be rounded up or down, as applicable, to the nearest whole dollar.

6.6     *Withholding and Reporting.* The Reorganized Debtor shall comply with all applicable withholding and reporting requirements imposed by federal, state, and local taxing authorities, and all distributions shall be subject to such withholding and reporting requirements.

## ARTICLE 7
## MEANS FOR IMPLEMENTATION AND EXECUTION OF THE PLAN

7.1     *Sources of Funding.* The Plan contemplates that distributions will be funded by revenues generated during the Debtor's post-petition operations, the Reorganized Debtor's Net After Tax Cash Flow, and the new value contribution described in section 7.2 below. In addition, the Debtor has reached an agreement with Farmland Partners for the Second Line of Credit as set forth in Exhibit 3 and fully integrated herein. To the extent not already approved, upon the occurrence of the Confirmation Date, the Second Line of Credit shall be deemed approved by the Court. *The filing of this Plan shall constitute a motion for such relief.*

7.2     *Post-Petition Operations.* Through the Confirmed Plan, as discussed in Article 5.1, or otherwise, the Debtor has or will assume the Row Crop Lease, Sod Farm Leases, Unruh Lease and Equipment Lease. The Second Line of Credit, the Equipment Lease, Row Crop Lease, Sod Farm Leases, and the Unruh Lease are all cross collateralized and a default under any

one of these secured agreements constitutes a default on all obligations to Farmland Partners. Further, upon payment of Second Line of Credit, the Equipment Lease, Row Crop Lease, and Sod Farm Leases, Farmland Partners is entitled to held back rent on the Row Crop Lease of $409/ acre, in the amount of $50,553.92.

7.2    ***New Value Contribution.***    In return for a new value contribution of $10,000 on or before the Effective Date, Baucom will retain 100% of the Equity Interests in the Reorganized Debtor.

7.3    ***Distributions of Available Funds.***    The Debtor anticipates that all Allowed Administrative Claims will be paid in full upon the Effective Date with the proceeds of the new value contribution, and, to the extent necessary, with post-petition operations. Periodic payments to the holders of Allowed Secured Claims will be funded from the post-confirmation operations of the Reorganized Debtor. Distributions to the holders of Allowed Unsecured Claims will be paid from the Reorganized Debtor's Net After Tax Cash Flow as specified in Article 3. The Reorganized Debtor shall have discretion to retain a reasonable portion of such monies to fund the Disputed Claim Reserve described in Section 8.3 of this Plan to account for Disputed Claims, if any.

7.4    ***Authority to Act Following Confirmation Date.***    Upon confirmation of this Plan, the Debtor shall be authorized to take all necessary steps, and perform all necessary acts, to consummate the terms and conditions of this Plan including, without limitation, the execution and filing of all documents required or contemplated by this Plan. In connection with the occurrence of the Effective Date, the Reorganized Debtor is authorized to execute, deliver, or record such contracts, instruments, releases, indentures, and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

7.5    ***Authority to Act Following Effective Date.***    The Reorganized Debtor shall be authorized to execute, deliver, file, or record such contracts, instruments, articles, releases, indentures, and other agreements or documents and to take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan and any notes or securities issued pursuant to this Plan.

7.6    ***Status of Liens of Secured Tax Claims and Other Lien Claimants.***    Unless otherwise provided in this Plan or by Order of the Bankruptcy Court, on the Effective Date, all existing liens held by any Class or Classes on the Debtor's assets shall retain the same priority that existed on the Petition Date, provided that such liens shall not extend to property acquired by the Debtor after commencement of the Chapter 11 Cases as set forth in section 552 of the Bankruptcy Code. Section 552 of the Bankruptcy Code shall continue to apply to all such liens and security interests following confirmation of the Plan. All other liens and encumbrances not specifically provided for in the Plan shall be deemed automatically canceled, terminated and of no further force or effect without further act or action under any applicable agreement, law, regulation, order, or rule.

7.7    ***Effectuating Documents and Further Transactions.***    The Debtor and the

Case 18-31823    Doc 77    Filed 04/05/19    Entered 04/05/19 19:23:08    Desc Main

Reorganized Debtor shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, articles, and other agreements or documents and to take such actions as may be necessary or appropriate, for and on behalf of the Debtor and the Reorganized Debtor, to effectuate and further evidence the terms and conditions of this Plan and any notes or securities issued pursuant to this Plan.

# ARTICLE 8
## RESOLUTION OF DISPUTED CLAIMS AND INTERESTS

8.1    ***Objections to Claims and Interests; Prosecution of Disputed Claims and Interests.***    The Debtor and, after the Effective Date, the Reorganized Debtor, shall have the exclusive right to object to the allowance, amount or classification of Claims and Interests asserted in the Chapter 11 Case, and such objections may be litigated to Final Order by the Debtor or Reorganized Debtor, as applicable, or compromised and settled in accordance with the business judgment of the Debtor or Reorganized Debtor, as applicable, without further order of the Bankruptcy Court. Unless otherwise provided herein or ordered by the Bankruptcy Court, all objections to Claims and Interests shall be filed no later than one hundred and twenty (120) days after the Effective Date, subject to any extensions granted pursuant to a further order of the Bankruptcy Court, which extensions may be obtained by the Reorganized Debtor upon *ex parte* motion.

8.2    ***Estimation of Disputed Claims and Interests.***    The Debtor and, after the Effective Date, the Reorganized Debtor, may at any time request that the Bankruptcy Court estimate for all purposes, including distributions under this Plan, any Disputed, contingent or unliquidated Claim or Interest pursuant to Section 502(c) of the Bankruptcy Code whether or not the Debtor or the Reorganized Debtor have previously objected to such Claim or Interest. The Bankruptcy Court shall retain jurisdiction to estimate any such Claim or Interest at any time, including, without limitation, during the pendency of an appeal relating to such objection.

8.3    ***Establishment of Disputed Claims Reserve***.    Subject to further order of the Bankruptcy Court, the Reorganized Debtor shall establish the Disputed Claims Reserve within 120 days of the Effective Date in the event it (or the Debtor) objects to the allowance, amount or classification of any Claims or Interests.

8.4    ***No Distribution on Account of Disputed Claims and Interests.***    Notwithstanding anything else contained in this Plan, except with respect to any undisputed, non-contingent and liquidated portion of General Unsecured Claims, no distribution shall be due or made with respect to all or any portion of any Disputed, contingent, or unliquidated Claim until the Claim becomes an Allowed Claim by Final Order. The Reorganized Debtor shall set aside or reserve a portion of the consideration payable to the holders of Allowed Claims and Allowed Interests in a particular Class to be held in the Disputed Claims Reserve for such Class in an amount sufficient to pay to the holders of all Disputed Claims in such Class the full distributions they may be entitled to if their respective Claims and Interests were ultimately to be allowed in full by Final Order.    When all Disputed Claims are resolved by Final Order, distributions on account of such Claims that are allowed, but that remain unpaid pursuant to Article 3 of this Plan, shall be disbursed from the Disputed Claims Reserve.    Any remaining

funds or property in the Disputed Claims Reserve shall then be applied by the Reorganized Debtor in its reasonable discretion consistent with the terms of the Plan.

# ARTICLE 9
## EFFECT OF CONFIRMATION OF PLAN

9.1      ***Vesting of Assets and Retained Causes of Action.*** On the Effective Date, pursuant to § 1141(b) of the Bankruptcy Code, all assets of the Debtor and Debtor in Possession shall vest in the Reorganized Debtor free and clear of any and all Claims, Liens, Interests, and other interests, charges and encumbrances, except as otherwise expressly provided in this Plan or in the Confirmation Order. From and after the Effective Date, the Reorganized Debtor may operate its business and may own, use, acquire and dispose of its assets free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules and in all respects as if the Chapter 11 Case had never been filed. Except as otherwise specifically provided in this Plan, the Reorganized Debtor shall retain all rights and is authorized to commence and pursue, as it deems appropriate, any and all claims and causes of action, including, but not limited to Avoidance Actions, whether arising before or after the Petition Date, in any court or other tribunal including, without limitation, in an adversary proceeding filed in the Chapter 11 Case, and including but not limited to, the claims and causes of action specified in the Plan.

9.2      ***Binding Effect.*** Subject to the occurrence of the Effective Date as set forth in Article 10 of the Plan, on and after the occurrence of the Confirmation Date, the provisions of this Plan shall bind any holder of a Claim against, or an Interest in, the Debtor and such holder's successors and assigns, whether or not such holder's Claim or Interest is impaired under the Plan, whether or not such holder has accepted the Plan, and whether or not such holder is entitled to a distribution under the Plan.

9.3      ***Discharge of the Debtor.*** Except as otherwise provided in this Plan or the Confirmation Order, the rights afforded in this Plan and the treatment of Claims and Interests herein shall be in exchange for and in complete satisfaction, discharge, and release of all Claims against and Interests in the Debtor, the Debtor in Possession, the Reorganized Debtor or the assets, interests in, or property of the Debtor, the Debtor in Possession or the Reorganized Debtor of any nature whatsoever, including any Interest accrued on any Claim from and after the Petition Date. Except as expressly otherwise provided herein or in the Confirmation Order, on the Effective Date, all Claims arising before the Effective Date (including those arising under Sections 502(g), 502(h) or 502(i) of the Bankruptcy Code) against the Debtor and the Debtor in Possession (including any based on acts or omissions that constituted or may have constituted ordinary or gross negligence or reckless, willful, or wanton misconduct of any of the Debtor's officers, directors, employees, or agents, or any conduct for which the Debtor may be deemed to have strict liability under any applicable law), and all Interests shall be irrevocably satisfied, discharged, cancelled and released in full.

For the avoidance of doubt, the Reorganized Debtor shall be responsible only for (a) those payments and Distributions expressly provided for or due under this Plan and (b) Claims and Interests that are not canceled and discharged pursuant to specific and express provisions of this Plan, and then only to the extent and in the manner specifically and expressly provided in this Plan. All Entities are precluded and forever barred from asserting against the Debtor, the

MWH: 10370.001; 00020230.5

Debtor in Possession, or the Reorganized Debtor, or the assets, properties, or Interests in or property of the Debtor, the Debtor in Possession, or the Reorganized Debtor of any nature whatsoever, any Claims or Interests based upon any act or omission, transaction, or other activity, event, or occurrence of any kind or nature that occurred prior to the Effective Date, whether or not the facts of or legal bases there for were known or existed prior to the Effective Date, except for (a) those payments and distributions expressly due under this Plan and (b) Claims and Interests, if any, that are not canceled and discharged under the Plan, but instead survive pursuant to specific and express provisions of this Plan.

Except as expressly provided in this Plan, nothing herein shall be construed to affect the liability of any other person or entity for a debt that is discharged as to the Debtor, the Debtor in Possession, and/or the Reorganized Debtor.

9.4    ***Indemnification Obligations.*** Subject to the occurrence of the Effective Date as set forth in Article 10 of this Plan, the obligations of either the Debtor to indemnify, reimburse or limit liability of any person who is serving or has served as one of its directors, officers, employees or agents by reason of such person's prior or current service in such capacity as provided in the applicable articles of organization, operating agreements, partnership agreements, or bylaws, by statutory law or by written agreement, policies or procedures of or with the applicable company, shall be deemed to be and treated as executory contracts that are assumed by the Debtor and assigned to the Reorganized Debtor pursuant to the Plan and section 365 of the Bankruptcy Code and shall not be affected by or discharged by this Plan. Nothing in the Plan shall be deemed to affect any rights of any director or officer or any other person against any insurer with respect to any directors or officers liability insurance policies.

9.5    ***Term of Certain Injunctions.*** Unless otherwise provided herein or in the Confirmation Order, all injunctions and/or stays provided for in, or in connection with, this Chapter 11 Case, whether pursuant to the provisions of the Bankruptcy Code or other applicable law, in existence on the Confirmation Date, shall remain in full force and effect through the Effective Date and thereafter if so provided by this Plan, the Confirmation Order, or by their own terms; *provided that* any holder of an Allowed Secured Claim whose collateral is surrendered to it pursuant to the terms of this Plan, or, any holder of an Allowed Secured Claim whose collateral is retained by the Reorganized Debtor pursuant to the terms of this Plan but with respect to which there is a post-confirmation default by the Reorganized Debtor in its obligations hereunder, shall not be enjoined nor prohibited from exercising its *in rem* rights as to such collateral under applicable state law following occurrence of the Effective Date (unless ordered otherwise by the Bankruptcy Court). In addition, on and after the Confirmation Date, the Debtor may seek such further orders as it deems necessary or appropriate to preserve the *status quo* during the time between the Confirmation Date and the Effective Date.

9.6    ***No Successor Liability.*** Except as otherwise stated in the Plan or Confirmation Order, neither the Debtor nor the Reorganized Debtor will have any responsibilities for any liabilities or obligations of the Debtor or any of the Debtor's past or present subsidiaries relating to or arising out of the operations of or assets of the Debtor or any of the Debtor's past or present subsidiaries, whether arising prior to, or resulting from actions, events, or circumstances occurring or existing at any time prior to the Effective Date. The

Reorganized Debtor shall have no successor or transferee liability of any kind or character, for any Claims; provided, however, that the Reorganized Debtor shall have the obligations for the payments specifically and expressly provided, and solely in the manner stated, in this Plan.

9.7     ***Preservation of Claims Not Settled or Released.***   Without limiting any other provisions of this Plan, unless a Claim or cause of action against a Creditor or other Entity is expressly and specifically waived, released, compromised or settled in this Plan or any Final Order, the Reorganized Debtor reserves the same for pursuit by the Reorganized Debtor after the Effective Date.   No preclusion doctrine, including, without limitation, res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such claims or causes of action upon or after the Confirmation Date or the Effective Date of the Plan.   The Reorganized Debtor reserves the right to pursue or adopt any claims (and any defenses) or causes of action of the Debtor or Debtor in Possession as trustees for or on behalf of their Creditors, not specifically waived, released, compromised or settled in this Plan or any Final Order against any Entity, including, without limitation, the plaintiffs or codefendants in any lawsuits. The Reorganized Debtor shall be a representative of the Consolidated Estate appointed for the purposes of pursuing any and all such claims and Causes of Action under 11 U.S.C. § 1123(b)(3)(B).

Any Entity to whom the Debtor has incurred an obligation (on account of services, purchase or sale of goods, tort, breach of contract or otherwise), or who has received services or otherwise transacted business with the Debtor in any capacity should assume that such obligation, transfer, or other transaction may be reviewed by the Reorganized Debtor subsequent to the Effective Date and may, to the extent not theretofore specifically waived, relinquished, released, compromised or settled in this Plan or any Final Order, be the subject of an action or claim or demand after the Effective Date, whether or not (a) such Entity has filed a proof of claim against the Debtor in the Chapter 11 Case, (b) such Entity's proof of claim has been objected to, (c) such Entity's Claim was included in the Debtor's Schedules, or (d) such Entity's scheduled Claim has been objected to by the Debtor or has been identified by the Debtor as disputed, contingent, or unliquidated.

## ARTICLE 10
## THE EFFECTIVE DATE OF THE PLAN

10.1   ***Conditions to Occurrence of Effective Date of Plan.*** The "effective date of the plan," as used in Section 1129 of the Bankruptcy Code, shall not occur until the Effective Date as defined herein. The Effective Date shall occur upon the earlier of: (a) the Business Day that is thirty (30) days after entry of the Confirmation Order; or (b) upon satisfaction of the following conditions precedent (or conditions subsequent with respect to actions that are to be taken contemporaneously with, or immediately upon, the occurrence of the Effective Date), any of which may be waived in writing by the Debtor.

10.1.1 The Confirmation Order shall have been entered by the Bankruptcy Court.

10.1.2  The Confirmation Order shall have become a Final Order.

10.1.3   All actions, agreements and instruments, or other documents necessary to implement the terms and provisions of the Plan, if any, shall have been executed and delivered by any applicable non-debtor parties in form and substance satisfactory to the Debtor.

10.1.4  All actions, agreements and instruments, or other documents necessary to implement the terms and provisions of the Plan, shall have been executed by the Debtor.

10.1.6  Any federal, state, local and foreign governmental authorizations, consents and regulatory approvals required for the consummation of each of the transactions contemplated in the Plan shall have been obtained and shall have become final and non-appealable and, with respect to any court proceeding relating thereto, been approved by Final Order.

10.1.7  All fees and expenses due to or incurred by Professionals for the Debtor through the Effective Date not previously paid pursuant to interim or Final Orders shall have been paid into and shall be held in trust, free and clear of Liens, Claims and encumbrances (other than the rights of such Professionals) until due and payable in accordance with applicable court order.

10.1.8  All payments required to be made on the Effective Date shall have been made.

10.2     *Revocation of Confirmation Order or Withdrawal of Plan.* The Debtor may revoke or withdraw the Plan prior to the Confirmation Date by filing a Notice of Withdrawal of Plan in the record of the Chapter 11 Case. If the Plan is withdrawn prior to the Confirmation Date or if the Effective Date does not occur as set forth in Article 10, then the Plan shall be deemed withdrawn and the Confirmation Order (if any has been entered) shall be automatically revoked without the need for any action by any party in interest or the Bankruptcy Court. In such event, the Plan and the Confirmation Order shall be of no further force or effect and, the Debtor and all holders of Claims and Interests shall be restored to the *status quo ante* as of the day immediately preceding the filing of the Plan, and (ii) all the Debtor's respective obligations with respect to the Claims and Interests shall remain unchanged, all of the Debtor's rights and claims against all Entities shall be fully preserved and nothing contained herein or in the Disclosure Statement shall be deemed to constitute an admission or statement against interest or to constitute a waiver or release of any claims by or against the Debtor or any other persons or to prejudice in any manner the rights of the Debtor or any person in any further proceedings involving the Debtor or any other persons.

## ARTICLE 11
## MISCELLANEOUS PROVISIONS

11.1 *Payment of Statutory Fees.* All fees payable pursuant to Section 1930 of title 28 of the United States Code shall be paid by the Reorganized Debtor, as, when and in the amount as required by applicable law.  The Bankruptcy Administrator shall not be obligated to file an application authorizing the payment of all such fees.

11.2 *Notice.* Any notice required or permitted to be provided to the Debtor or Reorganized Debtor under the Plan shall be in writing and served by either (a) certified mail,

return receipt requested, postage prepaid, (b) hand delivery, or (c) reputable overnight courier service, freight prepaid, to be addressed as follows:

Moon Wright & Houston, PLLC.
c/o Richard S. Wright
121 West Trade Street, Suite 1950
Charlotte, North Carolina 28202

   11.3 ***Headings.*** The headings used in this Plan are inserted for convenience only and do not in any manner affect the construction of the provisions of this Plan.

   11.4 ***Governing Law***. Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of the State of North Carolina, without giving effect to any conflicts of law principles thereof that would result in the application of the laws of any other jurisdiction, shall govern the construction of this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise expressly provided in such instruments, agreements, or documents.

   11.5 ***Additional Documents.*** The Debtor has the authority to take any and all actions and execute (and perform) any agreements and documents as the Debtor deems necessary or appropriate in their reasonable discretion to effectuate and further evidence the terms and conditions of this Plan.

   11.6 ***Compliance with Tax Requirements.*** In connection with this Plan, the Debtor and the Reorganized Debtor will comply with all applicable withholding and reporting requirements imposed by federal, state, and local taxing authorities, and all distributions hereunder shall be subject to such withholding and reporting requirements.

   11.7 ***Exemption from Transfer Taxes.***  Pursuant to § 1146(a) of the Bankruptcy Code, to the extent applicable, the issuance, transfer, or exchange of any securities under this Plan, the making or delivery of any mortgage, deed of trust, other security interest, or other instrument of transfer under, in furtherance of, or in connection with this Plan, shall be exempt from all taxes as provided in such section of the Bankruptcy Code.

   11.8 ***Further Authorizations.*** The Debtor, and after the Effective Date, the Reorganized Debtor, may seek such orders, judgments, injunctions, and rulings they deem necessary or useful to carry out the intention and purpose of, and to give full effect to, the provisions of this Plan.

   11.9 ***Successors and Assigns.*** The rights, benefits and obligations of any Entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, personal representative, successor or assign of such Entity.

   11.10 ***Modification and Amendment of the Plan.*** Subject to the restrictions in section 1127 of the Bankruptcy Code and Bankruptcy Rules 2002 and 3019, this Plan may be amended or modified by the Debtor, and, after the Effective Date, by the Reorganized Debtor.

MWH: 10370.001; 00020230.5

## ARTICLE 12
## RETENTION OF JURISDICTION

Pursuant to §§ 105(a) and 1142 of the Bankruptcy Code, the Bankruptcy Court shall retain and have jurisdiction to the fullest extent provided by applicable law over any matter arising under the Bankruptcy Code or arising in or related to the Chapter 11 Case or this Plan, including, without limitation, the following:

12.1    ***Executory Contracts and Unexpired Leases.*** To hear and determine any and all motions or applications (i) for the assumption, assumption and assignment or rejection of executory contracts or unexpired leases to which the Debtor is a party or with respect to which the Debtor may be liable, (ii) to review and determine all Cure Payments under any such assumed executory contract or unexpired lease, and (iii) to review and determine any Claims resulting from the rejection of any executory contract or unexpired lease.

12.2    ***Causes of Action.*** To determine any and all Causes of Action, including all adversary proceedings, applications, motions, and contested or litigated matters that may be pending on the Effective Date or that, pursuant to this Plan, may be instituted by the Reorganized Debtor after the Effective Date.

12.3    ***Disputed Claims, Contingent Claims and Unliquidated Claims Allowance/Disallowance.*** To hear and determine any objections to the allowance of Claims or Interests (other than Claims that are Allowed pursuant to the Plan or by prior, Final Order of the Bankruptcy Court), including but not limited to any objections to the classification of any Claim, and to allow or disallow any contingent Claim, Disputed Claim, unliquidated Claim, contingent Interest, disputed Interest in whole or in part, and to determine any and all disputes among Creditors and holders of Interests with respect to their Claims and Interests.

12.4    ***Enforcement/Modification of Plan.***

12.4.1 To hear and determine any requests to modify this Plan, remedy any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order.

12.4.2 To hear and determine all controversies, suits, and disputes that may relate to, impact upon, or arise in connection with this Plan or any other Plan documents or their interpretation, implementation, enforcement, or consummation.

12.4.3 To hear and determine other matters that may be set forth in the Plan and Confirmation Order or that relate to any transaction required or contemplated by the Plan.

12.4.4 To hear and determine any other matters related hereto, including matters related to the implementation and enforcement of the Plan, the Confirmation Order, and all orders entered by the Bankruptcy Court in the Chapter 11 Case.

12.4.5 To hear and determine any issue relating to distributions under the Plan.

MWH: 10370.001; 00020230.5

12.4.6 To enter such orders as are necessary to implement and enforce the injunctions described herein, including orders extending the protections afforded under Section 105 of the Bankruptcy Code.

12.4.7 To issue such orders in aid of execution of this Plan to the fullest extent authorized or contemplated by Section 1142 of the Bankruptcy Code.

12.5     *Compensation of Professionals.* To hear and determine all applications for allowance of compensation and reimbursement of expenses of Professionals, any other fees and expenses authorized to be paid or reimbursed under this Plan, and to approve the reasonableness of any payments made or to be made as provided in Section 1129(a)(4) of the Bankruptcy Code.

12.6     *Settlements.* To the extent that Bankruptcy Court approval is required, to consider and act on any compromise and settlement of any Claim against or Cause of Action by the Debtor or the Reorganized Debtor.

12.7     *Taxes.* To hear and determine matters concerning state, local, and federal taxes, fines, penalties, or additions to taxes for which the Debtor or Debtor in Possession may be liable, directly or indirectly.

12.8     *506(b), (c) Claims.* To determine the amounts, if any, of the reasonable fees, costs and other charges payable under sections 506(b) and/or (c) of the Bankruptcy Code.

12.9     *Specific Purposes.* To hear and determine such other matters as may be provided for in the Confirmation Order or may be appropriate under applicable law.

12.10     *Final Decree.* To enter an order or final decree closing the Chapter 11 Case.

Dated: Charlotte, North Carolina
      April 5, 2019

                    Respectfully submitted,

                    **Bentwood Farms, LLC**

      By:      */s/ Charlie B. Baucom*
               Charlie B. Baucom, Member


                    **MOON WRIGHT & HOUSTON, PLLC**
      By:
                    */s/ Richard S. Wright*
               Richard S. Wright (Bar No. 24622)
               Cole Hayes (Bar No. 44443)
               121 West Trade Street, Suite 1950
               Charlotte, North Carolina 28202
               Telephone:  (704) 944-6560
               *Counsel for the Debtor*

MWH: 10370.001; 00020230.5

29